94

WALLOVER OIL COMPANY, APPELLANT, *v.* WATER POLLUTION CONTROL BOARD, DEPARTMENT OF HEALTH, STATE OF OHIO, APPELLEE.

[Cite as Wallover Oil Co. v. Ohio Water Pollution Control Bd. (1971), 29 Ohio Misc. 94.]

(No. 55013—Decided May 24, 1971.)

Common Pleas Court of Columbiana County.

*Mr. Robert S. Meermans,* for appellant.
*Mr. F. Richard Heath,* for appellee.

BETTIS, J. This matter came on for hearing on the appeal of the appellant, Wallover Oil Company, 401 Virginia Avenue, East Liverpool, Ohio, from an order of the Water Pollution Control Board, Department of Health, State of Ohio, Columbus, Ohio. Said appeal has been perfected in accordance with R. C. 6111.33. Appellant appeared with counsel, and the appellee appeared through the Attorney General of the State of Ohio.

By agreement of the parties and as provided by statute, this matter was considered by the court on the record taken at the hearing before the Water Pollution Control Board on Tuesday, April 14, 1970. The matter was argued by counsel.

All parties agree that the application was properly filed and the appeal perfected in accordance with the statute. Two principal questions of law arise. One—Does the equipment operated by the appellant constitute an industrial water pollution control facility, as defined in R. C. 6111.01(J)? R. C. 6111.01(J) reads as follows:

"(J) *On and after November 1, 1967, 'industrial* water pollution control facility' means any disposal system or any treatment works, pretreatment works, appliance, equipment, machinery, or installation constructed, used or placed in operation primarily for the purpose of reducing, controlling, or eliminating water pollution caused by industrial waste, *or for reducing, controlling, or eliminating the discharge into a disposal system of industrial waste, or what would be industrial waste if discharged into the waters of the state.*" (Emphasis added.)

From the testimony in the record, it would appear clear, and does so to this court, that the equipment used by the appellant is operated primarily for the purpose of reducing, controlling, or eliminating water pollution caused by industrial waste, to-wit, "used oil." It is agreed by all the parties that the equipment's principal function is the removing of pollutants and other impurities from used industrial oil. It is further agreed that, as of the date of the hearing, the equipment in question was, in fact, performing the function as alleged by the appellant. The court, as well as counsel, being unable to find any case law on point, specifically finds that it was the intention of the Legislature, in setting out the definition of an industrial water pollution control facility, not to limit such facility to those used or controlled by the alleged polluter, but, on the other hand, to include all facilities, whether owned, leased, or used by the alleged polluter so long as said equipment performs those functions as described in the definition of an industrial water pollution control facility, as set forth in R. C. 6111.01(J). Therefore, the court specifically finds that the equipment, as described in the application to the water pollution control board and as used by the appellant, is, in fact, an industrial water pollution control facility.

The next question which the court must decide—Is appellant entitled to an exemption certificate in accordance with R. C. 6111.31? It appears clear to the court that the Legislature, in providing for such exemption, intended to encourage alleged polluters and *other industry* as well to build, construct, maintain, and operate appliances, equipment, machinery, and structures, which would reduce, control, and eliminate water pollution caused by industrial waste in this state. It appears clear to the court that it was the intention of the Legislature to have such exemption apply to the use of the equipment rather than to the individual user, or the alleged polluter. It is certainly obvious to this court, and the court could almost take judicial notice of the fact that oil in its natural state, as well as its polluted or used condition is, in fact, a pollutant, when discharged into the waters, or streams of the State of Ohio, and the Legislature intended any effort made by individuals in this state to alleviate such pollution to receive some benefit therefrom, as provided for in the exemption statute, R. C. 6111.31. This court does not believe it should do anything to discourage efforts of industry, or other individuals, to continue their effort, and, in fact, increase the same to eliminate water pollution.

Therefore, the decision is reversed, and the appellee Water Pollution Control Board is ordered to execute an exemption certificate, as provided for in R. C. 6111.31.